KETHLEDGE, Circuit Judge.
In 1998, a Michigan court convicted Nathaniel Hatchett of carjacking, armed robbery, kidnaping, and first degree criminal sexual conduct. Ten years later, the Innocence Project at Thomas M. Cooley Law School uncovered a DNA report, potentially favorable to the defense, that the prose *569 cution had not disclosed to Hatchett. Hatchett was thereafter- released from prison. He later filed suit under 42 U.S.C. § 1983 in federal district court, alleging that the city of Detroit, the city of Sterling Heights, Macomb County, various individual officers and supervisors, and the assistant prosecutor had each violated his due-process rights. The district court granted summary judgment to the defendants on all of Hatchett’s claims. We affirm.
I.
In November 1996, a young man attacked a woman as she was getting into her car in Sterling Heights, Michigan. He threatened her life, drove her to a side street, raped her, and left her as he drove off in her car. The victim called the police and went to the hospital, where the staff collected semen from her underwear.
Three days later, Officer Kenneth Williams of the Detroit Police Department spotted Nathaniel Hatchett, along with four passengers, driving the victim’s car. Officer Williams stopped Hatchett and questioned him at Detroit police headquarters, where supervisor Hilton Napoleon was present. Williams then turned Hatchett over to Sterling Heights police officers Richard Van Sice and Jeffrey Plaunt, who questioned Hatchett for several hours. Finally, Hatchett confessed to the rape.
Before Hatchett’s trial, DNA testing showed that the semen collected from the victim did not originate from Hatchett or the victim’s husband. Hatchett alleges that Officer Van Sice and Eric Kaiser, the assistant prosecutor handling his trial, each received the results from the husband’s DNA test. Neither Hatchett nor his attorney, however, received notice that the husband was excluded. Despite these results, Kaiser minimized the significance of Hatchett’s DNA exclusion during his closing argument, saying, “we can’t speculate whether another person, her husband, the Lone Ranger created vaginal deposits that were eventually testedf.]” [Trial Tr. at 250-51.]
Hatchett was convicted after a bench trial and sentenced to 25 to 40 years in prison. On appeal, the State argued that the semen might have originated from the victim’s husband. The Michigan Court of Appeals affirmed Hatchett’s conviction.
Ten years later, the Innocence Project at Thomas M. Cooley Law School uncovered the report excluding the victim’s husband. The court granted Hatchett’s motion for a new trial, and the State dropped the charges. Hatchett then brought a § 1983 action in federal district court, basing his claims on two primary allegations of misconduct: first, that Assistant Prosecutor Kaiser and Officer Van Sice deliberately withheld the results of the husband’s DNA test; and, second, that Hatchett’s confession was coerced by Sterling Heights officers and Officer Williams. The defendants fall into four groups: the City of Detroit defendants, including the City of Detroit, Officer Williams, and Lieutenant Napoleon; the Sterling Heights defendants, including the City of Sterling Heights, Officers Van Sice and Plaunt, and police sergeants Michael Reece and Scott Lucas; the Macomb County defendants, including Macomb County and Macomb County Prosecutor Carl Marlinga; and finally, former Assistant Prosecutor Eric Kaiser. The district court granted summary judgment on all counts to all defendants. Hatchett appeals.
II.
A.
Hatchett argues that the district court erred in granting summary judgment on his claims surrounding his confession. He alleges that Van Sice, Plaunt, and Williams *570 fed him details of the crime and coerced him to confess falsely, in violation of his due-process rights. Hatchett also says that Officer Napoleon approved the Detroit interrogation and that Napoleon was deliberately indifferent in his supervision and training of the officers who conducted it. Similarly, Hatchett alleges that Sergeants Reece and Lucas were deliberately indifferent regarding the Sterling Heights interrogation. Finally, Hatchett asserts claims of municipal liability against Detroit and Sterling Heights for their alleged practices of coercing false confessions.
But we are not the first court to hear Hatchett’s claim that his confession was coerced. At a hearing before his criminal trial (known as a “Walker ” hearing), Hatchett claimed that his confession was coerced and therefore should be suppressed. See generally People v. Walker, 374 Mich. 331, 132 N.W.2d 87 (1965). Williams and Van Sice testified at the hearing. Hatchett chose not to, even though the judge explained to him that his testimony could not be used against him at trial. After considering the evidence, the court found that Hatchett’s confession was voluntary. Hatchett could have appealed the ruling, but did not.
In this case, the district court held that collateral estoppel barred Hatchett from contesting the voluntariness of his confession. We review the district court’s application of collateral estoppel de novo. See Wolfe v. Perry, 412 F.3d 707, 716 (6th Cir.2005). In doing so we apply Michigan law, since “[fjederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state.” Buck v. Thomas M. Cooley Law School, 597 F.3d 812, 816-17 (6th Cir.2010) (citing 28 U.S.C. § 1738).
In Michigan, collateral estoppel has normally three elements: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. See Storey v. Meijer, Inc., 431 Mich. 368, 429 N.W.2d 169, 171 n. 3 (1988). But the last element — mutuality— is inapposite to the question whether a determination in a criminal case has pre-clusive effect in a civil case. See Monat v. State Farm Ins. Co., 469 Mich. 679, 677 N.W.2d 843, 850 (2004). So we consider whether the first two requirements are met here.
Michigan courts treat a factual finding as to voluntariness pursuant to a Walker hearing as a final determination on the merits. See People v. Mann, 89 Mich. App. 511, 280 N.W.2d 577, 578 (1979); People v. Gray, 393 Mich. 1, 222 N.W.2d 515, 517 (1974). There was such a factual finding here, and the issue was actually litigated in the Walker hearing. Thus, the first element of collateral estoppel is met.
But Hachett argues the second element is not, because he did not have the husband’s DNA-test results at the Walker hearing. In Hatchett’s view, those results would have somehow discredited the testimony of Williams and Van Sice. But we do not see how the husband’s DNA test— which was conducted months after Hatchett confessed — would have shown that Williams and Van Sice used unfair tactics in eliciting the confession. That is particularly true given that Hatchett did not even introduce the results of his own DNA test at the hearing. His argument is simply a non sequitur; and Hatchett otherwise had every opportunity and incentive to contest the voluntariness of his confession at the Walker hearing.
Hatchett also argues that the outcome of his Walker hearing cannot have preclusive effect because his conviction was eventually set aside. But that argument conflates the question whether the police officers *571 unconstitutionally coerced Hatchett, with the question whether Hatchett was guilty of the crime. Those are two different questions: under Michigan law, a determination of voluntariness is separate from a determination of guilt. See People v. Manning, 243 Mich.App. 615, 624 N.W.2d 746, 750-51 (2000).
Thus, we see no basis under Michigan law not to give preclusive effect to the Michigan courts’ determination that Hatchett’s confession was voluntary. And that means he cannot prevail on his claim that the Detroit and Sterling Heights defendants coerced him to confess.
B.
Hatchett also brings several claims relating to his failure to obtain the results of the husband’s DNA test. The district court granted summary judgment on these claims, which we review de novo. See Moldowan v. City of Warren, 578 F.3d 351, 374 (6th Cir.2009).
1.
Hatchett claims that Kaiser withheld and, alternatively, destroyed the husband’s DNA-test results in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Kaiser responds that he is immune from the claims. Prosecutors are entitled to absolute immunity for functions that are an integral part of the judicial process. See Koubriti v. Convertino, 593 F.3d 459, 467 (6th Cir. 2010). This immunity extends to suits “arising out of even unquestionably illegal or improper conduct by the prosecutor so long as the general nature of the action in question is part of the normal duties of a prosecutor.” Cady v. Arenac County, 574 F.3d 334, 340 (6th Cir.2009). This immunity also extends to suits based upon a prosecutor’s failure to disclose exculpatory evidence to a defendant. See Koubriti, 593 F.3d at 467 (citing Imbler v. Pachtman, 424 U.S. 409, 431 n. 34, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). Kaiser is therefore immune from Hatchett’s claim that Kaiser failed to disclose the results of the husband’s DNA test to Hatchett.
But Hatchett seeks to recast this claim as one for the destruction of evidence. Specifically, Hatchett alleges in his complaint that Kaiser’s file did not include the results of the husband’s DNA test. But even if one takes that allegation at face value, a failure to put a document in a particular file is not the same thing as destroying it. And Hatchett otherwise points us to no evidence that Kaiser actually destroyed the husband’s DNA-test results. To the contrary, the Innocence Project’s recovery of the results suggests (if not demonstrates) that the results were not destroyed. Thus, Hatchett simply does not present evidence creating a genuine issue as to whether Kaiser destroyed the results of the husband’s DNA test. His claim fails for that reason; and thus we do not express any opinion as to whether a prosecutor’s absolute immunity would extend to his destruction of exculpatory evidence.
2.
Hatchett claims that Officer Van Sice violated his Brady rights by failing to disclose the husband’s DNA-test results to Kaiser. We have held that a police officer must disclose evidence whose “exculpatory value” should be “apparent” to the officer. Moldowan, 578 F.3d at 389. But Hatchett himself concedes that Kathy Kuebler, the Michigan State Police laboratory scientist in charge of the test, left a telephone message with Kaiser’s secretary to inform Kaiser about the test results. [Appellant’s Br. at 45.] And Hatchett concedes that Kuebler faxed a copy of the test results to Kaiser’s office. [Id.] Those concessions defeat Hatchett’s claim. The Constitution did not require Van Sice personally to *572 follow up and ensure that Kaiser actually reviewed the test results that Hatchett concedes were sent to him.
Hatchett also claims that Prosecutor Carl Marlinga and Macomb County failed to train their assistant prosecutors regarding the disclosure of exculpatory evidence. Supervisory attorneys are immune from a suit directly attacking their actions related to an individual trial. See Van de Kamp v. Goldstein, 555 U.S. 335, 345, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009). And a prosecutor’s office may not be held liable under § 1983 for failure to train its prosecutors based on a single Brady violation. See Connick v. Thompson, — U.S. -, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011). In Connick, the assistant district attorney failed to disclose a laboratory report that could have been favorable to the defense. Id. at 1356. The Court held that recurring constitutional violations are not the “obvious consequence” of failing to provide prosecutors with formal training, since they are professionally equipped and ethically bound to know what Brady entails and to perform legal research when they are uncertain. Id. at 1363. Hatchett’s claims are indistinguishable from those in Connick. And Hatchett has not offered proof of a pattern of violations or policy of inaction by the County or Marlinga. See id. at 1360. These claims therefore fail as well.
3.
Hatchett also claims that the district court erred in granting defendants’ motion for summary judgment before all discovery was completed. “We review the trial court’s ruling on discovery matters for an abuse of discretion.” Evanoff v. Standard Fire Ins. Co., 534 F.3d 516, 522 (6th Cir. 2008). The discovery that Hatchett thought necessary pertained only to allegedly deficient training by Macomb County and Marlinga. That claim fails under Con-nick, regardless of what the discovery would have shown. Thus, the district court did not abuse its discretion.
The district court’s judgment is affirmed.