RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAMIE LEE PETERSON,

        *Plaintiff-Appellee*,

    *v.*

DAVID HEYMES, et al.,

        *Defendants*,

DAVID ISRAEL and COUNTY OF KALKASKA (17-2270);
GREG SOMERS and MARK URIBE (17-2281),

        *Defendants-Appellants*.

Nos. 17-2270/2281

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:15-cv-00969—Paul Lewis Maloney, District Judge.

Argued:  October 4, 2018

Decided and Filed:  July 25, 2019

Before:  SILER and KETHLEDGE, Circuit Judges; OLIVER, District Judge.[*]

---

## COUNSEL

**ARGUED:**  Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellants David Israel and County of Kalkaska.  John G. Fedynsky, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants Greg Somers and Mark Uribe.  Roshna Bala Keen, LOEVY & LOEVY, Chicago, Illinois, for Appellee.  **ON BRIEF:**  Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellants David Israel and County of Kalkaska.  John G. Fedynsky, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for

---

[*]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Appellants Greg Somers and Mark Uribe.  Roshna Bala Keen, Jon Loevy, LOEVY & LOEVY, Chicago, Illinois, for Appellee.

———————————

## OPINION

———————————

OLIVER, District Judge.  In 2014, the Circuit Court for the County of Kalkaska, Michigan vacated Plaintiff-Appellee Jamie Lee Peterson's ("Peterson") conviction for a 1996 rape and murder.  Thereafter, he commenced this action, asserting federal claims under 42 U.S.C. § 1983 and various state-law claims in the United States District Court for the Western District of Michigan against Defendants-Appellants David Israel (a Deputy in the Kalkaska County Sheriff's Department), Gregory Somers and Mark Uribe (officers of the Michigan State Police), and the County of Kalkaska ("Defendants").[1]  Peterson seeks redress for claims arising from an allegedly coerced confession, which was admitted into evidence in Peterson's criminal trial, but was not the basis for Peterson's relief from judgment.  The district court found that Peterson was not collaterally estopped from relitigating the voluntariness of his confession and thus denied Defendants qualified immunity, absolute witness immunity, and governmental immunity.  Defendants appeal.

For the following reasons, we **AFFIRM** the district court's decision to deny qualified immunity and governmental immunity to Defendants Somers and Uribe and to deny their Motion to Dismiss on all claims.  Additionally, we **REVERSE** the district court's decision to deny Defendant Israel qualified immunity and governmental immunity.  Thus, we find that the district court erred in declining to dismiss the federal-law and state-law claims against Israel.  Finally, we **REVERSE** the district court's decision to deny governmental immunity to the County of

---

[1]The original Complaint also named the Estate of Brian Donnelly, the prosecutor in Peterson's criminal trial.  The Estate of Brian Donnelly has since been dismissed as a party in this case.  This court also accepted the appeal of Defendants  Officer David Heymes and the Village of Kalkaska (Case No. 17-2283). On September 20, 2018, Peterson and Heymes and the Village of Kalkaska jointly moved the court, pursuant to Rule 12.1 of the Federal Rules of Appellate Procedure, for a limited remand of this case to the United States District Court for the Western District of Michigan for the purpose of considering Plaintiff's Agreed Motion for Approval of Settlement Involving a Legally Incapacitated Individual.  The court granted the Joint Motion for Limited Remand that same day.

Kalkaska and to deny the County's Motion to Dismiss as to the federal-law and state-law claims against it.  We **REMAND** to the district court for further action consistent with this opinion.

## I.  BACKGROUND

In 1996, Geraldine Montgomery was sexually assaulted and murdered in her home in Kalkaska, Michigan.  Months later, 22-year-old Jamie Lee Peterson was in the Kalkaska County Jail on an unrelated charge, when another inmate informed Officers Heymes, Israel, and Somers that Peterson had made an incriminating statement about the Montgomery crime.  Peterson claims that at the time, he suffered from brain damage, mental illness, and severe depression, and was placed on suicide watch.  Peterson also claims that Defendants knew of Peterson's mental illness and cognitive disabilities.

Somers met with Peterson to follow up on the lead.  Peterson initially denied involvement, but after nine interrogations and several polygraph examinations by Heymes, Somers, and Uribe, Peterson confessed to committing the crime.  Peterson alleges that the officers took advantage of his mental state, fed him information to provide in his statements, and induced his confession with false promises, including that he would be sent to a psychiatric hospital instead of prison.  He also claims that the officers continued to mislead him about the consequences of his confession in order to pressure him into maintaining his statement even after he attempted to recant it.

A week after Peterson confessed, the DNA results came back showing Peterson's DNA was not a match for the semen sample from the victim's vagina.  However, there was a second sample from the victim's shirt, which could not be tested using the technology available at the time.  Nevertheless, charges were brought against Peterson based on his confession, pursuing a multiple assailant theory.

Before trial, Peterson's attorney moved to suppress Peterson's confession, arguing that Peterson lacked the capacity to confess, and that the police officers used unlawful tactics that led to his false confession.  After a suppression hearing regarding the voluntariness of his

confession, which under Michigan law is called a *Walker* hearing,[2] a judge found his confession admissible.  A jury subsequently convicted Peterson of the murder and rape charges, as well as the commission of larceny in a building.

In 2013, after improvements in DNA technology, Peterson's attorneys from the University of Michigan Law School Innocence Clinic and Northwestern Law School's Center on Wrongful Convictions obtained new DNA test results that excluded Peterson as a contributor to the previously inconclusive DNA sample found on the victim's shirt.  Based on this evidence, Peterson's conviction was vacated in 2014.  He was granted a new trial, and the prosecution subsequently dismissed the charges.

In 2015, Peterson commenced the instant case in the United States District Court for the Western District of Michigan under 42 U.S.C. § 1983, seeking damages from Defendants for the following claims: violations of the right against self-incrimination under the Fifth and Fourteenth Amendments (Count I); due process violations under the Fourteenth Amendment (Count II); failure to intervene to prevent the violation of federal constitutional rights (Count III); federal malicious prosecution under the Fourth and Fourteenth Amendments (Count IV); conspiracy to deprive federal constitutional rights (Count V); intentional infliction of emotional distress (Count VI); malicious prosecution under state law (Count VII); civil conspiracy under state law (Count VIII); respondeat superior (Count IX); and indemnification (Count X).  Defendants Somers and Uribe, and Israel and the County of Kalkaska, respectively filed motions to dismiss under Rules 12(b)(6) and 12(c).  The officers each raised qualified immunity in regard to the federal-law claims, and governmental immunity in regard to the state-law claims, as affirmative defenses. The County of Kalkaska also moved to dismiss the federal claims against it on the basis of Defendant Israel's qualified immunity and governmental immunity.  In support of immunity, Defendants claimed Peterson was collaterally estopped from relitigating the voluntariness of his confession, which the Michigan trial court had already determined was admissible in Peterson's criminal trial.  Absent allegations of a coerced confession, Defendants argued that Peterson could not defeat their immunity defenses.

---

[2]*People v. Walker*, 132 N.W.2d 87 (Mich. 1965) (establishing the requirement that the constitutionality of a confession be determined at a hearing prior to jury trial).

Because Defendants relied upon transcripts and other evidence from the *Walker* hearing that were not raised in Peterson's Amended Complaint, the district court converted the motions to ones for summary judgment under Rule 12(d), but it is clear from the record that he did so only as to the issue of collateral estoppel. The parties do not dispute that the court's bifurcation was proper. On September 29, 2017, the district court denied Defendants' motions, finding that the Michigan trial court's determination did not have preclusive effect after Peterson's conviction was vacated. After considering Plaintiff's allegations, the district court rejected the defenses of qualified immunity as to each officer and governmental immunity to each defendant.

Defendants now appeal the denial of immunity, arguing that the district court erred in rejecting Defendants' claim that Peterson was collaterally estopped from challenging the legality of his confession, and in finding that Peterson met his burden to overcome the immunity defenses.

## II.  ANALYSIS

### A.  Jurisdiction

This court has jurisdiction to review the denial of immunity against Peterson's federal-law and state-law claims. Ordinarily, the denial of a motion for summary judgment is an unappealable interlocutory ruling. 28 U.S.C. § 1291; *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008). However, it is well-established that an order denying qualified immunity to a public official is appealable as of right pursuant to the "collateral order" doctrine. *Leary v. Livingston Cty.*, 528 F.3d 438, 447 (6th Cir. 2008); *see also Livermore* ex rel. *Rohm v. Lubelan*, 476 F.3d 397, 407–08 (6th Cir. 2007) (finding the denial of governmental immunity for state-law claims is also immediately appealable under Michigan state law). This is a narrow exception, which permits appellate jurisdiction only "'to the extent that a summary judgment order denies qualified immunity based on a pure issue of law.'" *Leary*, 528 F.3d at 448 (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006)). Here, the issues of whether collateral estoppel should apply to a determination made in a criminal proceeding whose judgment was later vacated, or, in the alternative, whether Plaintiff sufficiently made out the elements to overcome qualified immunity or governmental immunity, are pure issues of law appropriate for

courts to decide on appeal. *Id.*; s*ee Roberson v. Torres*, 770 F.3d 398, 403 (6th Cir. 2014). Because the denial of Defendant County of Kalkaska's motion to dismiss was dependent on the district court's analysis and decision regarding immunity, this court may also exercise pendant appellate jurisdiction over the County's claims. *Lane v. City of LaFollette*, 490 F.3d 410, 423–24 (6th Cir. 2007) (permitting jurisdiction over an interlocutory appeal by a municipality when the municipality's grounds for dismissal or summary judgment are "inextricably intertwined" with the immunity analysis regarding its officer). Although Peterson argues that Israel, Somers, and Uribe forfeited the defense of qualified immunity, Defendants adequately raised the defense below.

## B. Qualified Immunity

The court conducts a *de novo* review of whether qualified immunity is applicable. *See v. City of Elyria*, 502 F.3d 484, 490 (6th Cir. 2007). Qualified immunity protects an official from liability if the official's conduct does not violate "clearly established" statutory or constitutional rights that a reasonable person would have known were in existence. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court held that a court must first determine whether there is a violation of a constitutional right before addressing the issue of whether the right was clearly established. However, the Supreme Court modified this approach in *Pearson v. Callahan*, 555 U.S. 223, 236–42 (2009). Thus, while this approach may be appropriate in many cases, it is no longer mandatory. *Id.* at 236. District and circuit court judges are allowed the freedom to determine which prong of the immunity analysis to address first. *Id.*

The Supreme Court has also stressed that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985)). Rather, it means that, "in the light of pre-existing law the unlawfulness must be apparent." *Id.*

A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). However, the plaintiff bears the ultimate burden of proof to show that the defendants are not entitled to qualified immunity. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

**1.**

Absent allegations of a coerced confession, Peterson cannot overcome qualified immunity. Therefore, we turn first to the question of whether the district court erred in finding Peterson was not collaterally estopped from relitigating the voluntariness of his confession.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts are required to "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). The preclusive effect of a state court judgment is determined by state law. *See id*. Michigan law allows "crossover estoppel," which precludes the relitigation of an issue from a criminal proceeding in a subsequent civil proceeding, and vice versa. *Barrow v. Pritchard*, 597 N.W.2d 853, 855–56 (Mich. Ct. App. 1999). In Michigan, collateral estoppel applies when: (1) an issue has been actually litigated and determined by a valid and final judgment; (2) the same parties have had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel. *See Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–46 (Mich. 2004). However, mutuality is not required when collateral estoppel is being invoked defensively. *Id.* at 844–45, 850.

Peterson argues that, because his conviction was vacated in 2014, the trial court's findings at the *Walker* hearing are not part of a "valid and final judgment." *See id*. Defendants assert that our decision in *Hatchett v. City of Detroit* holds that a trial court's findings at a *Walker* hearing retain their preclusive effect under Michigan law even after the conviction is vacated. *See* 495 F. App'x 567 (6th Cir. 2012). But *Hatchett* is an unpublished decision in which it was not clear that the criminal judgment had actually been vacated. *See id.* at 569;

*Hatchett v. City of Detroit*, No. 08-CV-11864, 2010 WL 1754426, at *6 n.4 (E.D. Mich. Apr. 30, 2010).

Here, the criminal judgment has been vacated. Therefore, the trial court's interlocutory rulings—including those which the court made at the *Walker* hearing—have merged with the final judgment, which means those interlocutory rulings have been vacated too. *See People v. Torres*, 549 N.W.2d 540, 546 & n.14 & n.15 (Mich. 1996). And vacated rulings have no preclusive effect under Michigan law. *See Fast v. Fast*, No. 221994, 2001 WL 637292, at *2 (Mich. Ct. App. May 25, 2001) (per curiam); *see also* Restatement (Second) of Judgments § 13 cmt. f. (1982); *Burton v. Topacz*, No. 212627, 2000 WL 33407430, at *3 (Mich. Ct. App. Aug. 18, 2000) (per curiam). This is also consistent with the approach we have taken in *Dodrill v. Ludt*, a case based on Ohio law, where we clearly held that a vacated judgment "technically leav[es] nothing to which we may accord preclusive effect." 764 F.2d 442, 444 (6th Cir. 1985). In *Dodrill*, this was the case even though the reversal of Dodrill's conviction was not based on the validity of the fact-findings from his suppression hearing. *Id*. at 445 (finding that when Dodrill's conviction was overturned, "all such factual determinations were vacated with it, and their preclusive effect surrendered"). Thus, there is no "valid and final judgment" that precludes Peterson from litigating his claims.

**2.**

Although Defendants' argument for qualified immunity rests mainly on the issue of collateral estoppel, Defendants also argue that, even accepting Peterson's allegations as true, they are entitled to qualified immunity because Peterson fails to plead clearly established constitutional violations with respect to each federal claim. We analyze qualified immunity separately for each defendant. *See, e.g.*, *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014); *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011).

The Fifth Amendment, which protects against self-incrimination, requires confessions to be given freely and voluntarily. *Malloy v. Hogan*, 378 U.S. 1, 7 (1964) (citing *Bram v. United States*, 168 U.S. 532 (1897)). This right is applicable to the states through the Fourteenth Amendment. *Malloy*, 378 U.S. at 8. A Fifth Amendment violation occurs only if the coerced

confession is used against the defendant at trial. *Chavez v. Martinez*, 538 U.S. 760, 767 (2003). In determining whether a confession is compelled, the constitutional inquiry is whether "a defendant's will was overborne in a particular case," considering "the totality of all the surrounding circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (noting that the United States Supreme Court has taken into account the age, education, and intelligence of the accused, length of detention, repeated or prolonged nature of questioning, physical punishment, and psychological impact on the accused); *United States v. Alsante*, 812 F.3d 544, 548 (6th Cir. 2016). Thus, the Supreme Court has acknowledged that "coercion can be mental as well as physical." *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960); *see also Culombe v. Connecticut*, 367 U.S. 568, 620 (1961) (finding a cognitively impaired man's confession was coerced and improperly admitted at trial where officers pressured his wife and children to coax him into confessing). For Fourteenth Amendment Due Process claims, the Sixth Circuit considers whether the defendant's conduct "shocks the conscience." *Chavez*, 538 U.S. at 774. This is a higher standard for "deprivations of liberty caused by the most egregious conduct." *Id.*

Defendants Somers and Uribe argue that there was nothing inherently coercive or improper about their interrogation techniques, and that nothing about their conduct would shock the conscience. However, Peterson maintains that Defendants Somers and Uribe knew but ignored the fact that Peterson was brain-damaged, emotionally unstable, depressed, and suicidal at the time of his interrogation. In addition, Peterson, who was twenty-two years old at the time, contends that Somers and Uribe fed him information to provide in his statements, and promised he would be sent to a psychiatric hospital instead of prison if he confessed. Although the right against self-incrimination "does not mandate that the police forgo all questioning," *Schneckloth*, 412 U.S. at 225, considering the totality of the circumstances and taking Peterson's allegations as true at this stage, Peterson's assertions are enough to show that Somers and Uribe's conduct could have amounted to a violation of the Fifth and Fourteenth Amendments. Thus, Peterson has met the requirements to overcome Somers and Uribe's qualified immunity defense with respect to his claim under the Fifth and Fourteenth Amendments (Count I).

The same allegations support the denial of qualified immunity to Somers and Uribe for Peterson's other federal claims. Peterson's Complaint alleges how Defendants Somers and

Uribe fed Peterson information for his confession and withheld this and other exculpatory and impeaching evidence from Peterson's defense counsel, and how those allegations amount to a clearly established constitutional violation with respect to malicious prosecution, procedural due process rights, and failure to intervene. *See France v. Lucas*, 836 F.3d 612, 625–26 (6th Cir. 2016) (a claim for malicious prosecution under the Fourteenth Amendment exists when the plaintiff was prosecuted without probable cause and the plaintiff suffered a deprivation of liberty as a result of the legal proceedings); *D'Ambrosio v. Marino*, 747 F.3d 378, 389–90 (6th Cir. 2014) (requiring officers to disclose evidence when it is apparent that the evidence "could form a basis for exonerating the defendant") (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (recognizing that law enforcement officials have an "affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers" when there was a realistic opportunity to intervene to prevent the harm from occurring) (citing *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982), *cert. denied*, 459 U.S. 1171 (1983)). In addition to the above statements from the Complaint, Peterson's claim of conspiracy to deprive him of his constitutional rights is further supported by assertions that Somers and Uribe consulted one another during Peterson's interrogations. Accordingly, we affirm the district court's decision to deny qualified immunity to Somers and Uribe in regard to each of Peterson's federal claims (Counts I–V).

However, unlike with Somers and Uribe, Peterson has not asserted sufficient allegations that Defendant Israel committed clearly established constitutional violations. The Complaint states that an inmate informed Israel about Peterson's incriminating statements while the inmate and Peterson were in jail together for reasons unrelated to this case. The Complaint also indicates that Israel and Somers communicated before Somers first interrogated Peterson about these incriminating statements. But the Complaint does not specifically state that Israel was involved in conducting the interrogations, administering polygraph tests, or any other activities. Thus, the allegations are too attenuated to show that a "violation was committed *personally*" by Israel such that Israel violated a clearly established constitutional right. *Robertson*, 753 F.3d at 615 (emphasis in original). Therefore, we reverse the district court's decision to deny qualified immunity to Defendant Israel as to Peterson's federal claims.

Where a municipality's claims are "inextricably intertwined" with the qualified immunity analysis before the court, the court may exercise pendant appellate jurisdiction regarding municipal liability. *Lane v. City of LaFollette*, 490 F.3d 410, 423 (6th Cir. 2007). Thus, having found that Israel is entitled to qualified immunity based on Peterson's failure to establish Israel's commission of a constitutional violation, the County also cannot be liable under these circumstances. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (whether the municipality had a policy, practice, or custom that authorized the use of unconstitutional conduct is irrelevant where the court has not found that the municipal officer's conduct violated the Constitution). Accordingly, we reverse the district court's decision to deny the County's Motion to Dismiss as to the federal-law claims against it.

## C. Governmental Immunity

The Officer Defendants also raise governmental immunity with respect to Peterson's state-law claims of intentional infliction of emotional distress (Count VI), malicious prosecution (Count VII), and civil conspiracy (Count VIII). Michigan's Government Tort Liability Act shields government employees with immunity unless the employee's conduct rises to the level of "gross negligence" or their conduct constitutes an "intentional tort." M.C.L. § 691.1401 *et seq.*; *Odom v. Wayne Cty.*, 760 N.W.2d 217, 228 (Mich. 2008) (reaffirming the test in *Ross v. Consumers Power Co.*, 363 N.W.2d 641 (Mich. 1984), as good law even after the passage of the Governmental Tort Liability Act). Like its federal counterpart, governmental immunity is an affirmative defense. For intentional torts, the Officer Defendants carry the burden to raise and establish governmental immunity by showing that: "(1) [T]he employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial in nature." *Odom*, 760 N.W.2d at 218. A governmental employee fails the "good faith" standard under the second prong when they act maliciously, recklessly, capriciously, or willfully and corruptly. *See id.* at 224–25.

We affirm the district court's order denying governmental immunity to Defendants Somers and Uribe, but reverse the district court's denial as to Defendant Israel. Since Peterson is not collaterally estopped from relitigating the voluntariness of his statements, there was no error

when the district court determined that Somers and Uribe's false promises and coaching of Peterson, and their awareness of Peterson's vulnerable mental state, does not amount to "honest belief and good-faith conduct." *Id.*; *see also id.* at 229 (noting that an objective analysis is not the proper inquiry because the "good faith element . . . is subjective in nature"). However, the Complaint limits Defendant Israel's involvement to being informed by an inmate of Peterson's incriminating statements, and communicating with Somers before Somers' first interrogation of Peterson. We agree with Israel that these statements do not support that Israel acted outside the scope of his authority or not in good faith. *See, e.g.*, *Walsh v. Taylor*, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004) (granting summary judgment to a defendant based on governmental immunity, in part, where the plaintiff presented "no evidence that would give rise to a reasonable inference that [the defendant] initiated or maintained" a malicious prosecution). Accordingly, we affirm the district court's decision to deny Somers and Uribe governmental immunity, but reverse the district court's denial of governmental immunity to Israel.

We also disagree with the district court's decision to deny governmental immunity to the County of Kalkaska. First, having determined that Defendant Israel is entitled to governmental immunity, the County of Kalkaska is also entitled to governmental immunity as to the derivative liability claims against it (Counts IX and X). Further, Michigan law provides that a governmental body is immune from suit unless "a plaintiff pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception," or pleads that the governmental body was not engaged in a governmental function when it caused the injury. *Mack v. City of Detroit*, 649 N.W.2d 47, 55–57 (Mich. 2002); *see* Mich. Comp. Laws Ann. § 691.1407(1). Accordingly, unlike with the individual defendants, Peterson bears the burden of pleading an exception to governmental immunity; otherwise, the County is entitled to it. Here, Peterson did not allege that his case fit an exception to immunity or that the County's alleged torts arose from non-governmental activity. Thus, the County is entitled to governmental immunity as to Peterson's state-law claims. We reverse the district court's decision denying the County's Motion to Dismiss the state-law claims against it.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of summary judgment on the issue of collateral estoppel. We also **AFFIRM** the district court's denial of Defendants Somers and Uribe's Motion to Dismiss the federal-law claims (Counts I-V) on the basis of a denial of qualified immunity, and the district court's denial of Somers and Uribe's Motions to Dismiss the state-law claims (Counts VI-VIII) on the basis of a denial of governmental immunity. However, we **REVERSE** the district court's decisions to deny Defendant Israel qualified immunity and governmental immunity, and to deny Israel's Motion to Dismiss the federal-law and state-law claims (Counts I-VIII). We also **REVERSE** the district court's denial of governmental immunity to the County of Kalkaska and the district court's decision to deny the County's Motion to Dismiss the federal-law and state-law claims against it (Counts I-IV, IX-X). The case is remanded to the district court for further proceedings consistent with this opinion.