RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0101p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

RANDY KRIS RAMGOOLAM,

                    *Plaintiff-Appellant*,

    *v.*

RITU GUPTA,

                    *Defendant-Appellee*.

No. 25-1676

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:24-cv-12725—F. Kay Behm, District Judge.

Argued:  March 19, 2026

Decided and Filed:  April 2, 2026

Before:  SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Gregory H. McLawsen, SOUND IMMIGRATION, Seattle, Washington, for Appellant.  Seth D. Gould, THE MILLER LAW FIRM, P.C., Rochester, Michigan, for Appellee.
**ON BRIEF:**  Gregory H. McLawsen, SOUND IMMIGRATION, Seattle, Washington, for Appellant.  Seth D. Gould, Jacob M. Campbell, THE MILLER LAW FIRM, P.C., Rochester, Michigan, for Appellee.

───────────────

## OPINION

───────────────

SUTTON, Chief Judge.  Ritu Gupta, an American, married Randy Ramgoolam, a Canadian, in 2017.  Three years later, Ramgoolam applied for residency in the United States.  Federal law allows an immigrant to become a permanent resident only if he can demonstrate that

he will not end up on the public dole.  To help her husband clear that hurdle, Gupta signed an Affidavit of Support, thereby committing to ensure that Ramgoolam's income remains above 125% of the federal poverty line each year.  The residency application was successful, but the marriage was not.  When the couple divorced in 2022, they agreed that neither would pay spousal support to the other.  Ramgoolam nonetheless filed this lawsuit against Gupta in federal court, claiming that she had failed to provide him the financial support promised by the Affidavit of Support.  The district court dismissed the case, reasoning that the state court's judgment of divorce precluded Ramgoolam's claim.  We affirm.

I.

Ritu Gupta was born in England and naturalized as an American citizen in 1997.  She lived in Winnipeg, Canada, in 2017 when she married Randy Ramgoolam, a Canadian citizen. The two remained in Canada for the next three years and welcomed a son in 2019.  In 2020, the family moved to Hawaii, where Gupta accepted a role as a physician for a local medical group.

Although Ramgoolam initially came to the United States on a tourist visa, he applied for lawful permanent resident status shortly after the family's move.  Gupta supported her then-husband's application by, as relevant here, agreeing to serve as his sponsor and signing an Affidavit of Support.  That document, which is a necessary component of a successful residency application, functions as a contract between a sponsor and the United States government.  By signing it, Gupta promised to provide Ramgoolam "any support necessary to maintain him . . . at an income that is at least 125 percent of the Federal Poverty Guidelines."  R.1-1 at 7.  In the event Gupta failed to live up to that obligation, federal law provided Ramgoolam a cause of action to sue her for that support.  8 U.S.C. § 1183a(e).

The federal government approved Ramgoolam's residency application in February 2021. But by then, his marriage to Gupta had unraveled.  Gupta separated from Ramgoolam in January 2021, moved to Michigan, and commenced divorce proceedings there in July of the same year.

The (former) couple signed a confidential settlement agreement and consented to a divorce judgment in a Michigan court in 2022.  The judgment purported to "resolve[] all issues

arising out of the parties' marriage," including "alimony/spousal support, property division, custody, parenting time, child support, attorney fees, taxes, and other related issues."  R.15-10 at 3.  The judgment specified that "neither party will pay spousal support to the other party."  R.15-10 at 4.  It also sought to put an end to the contentious litigation between the two, explaining that Ramgoolam and Gupta each released one another of "any claims either party has or may have had against the other party from the beginning of time until this Judgment is entered, regardless of the kind or nature of those claims or potential claims."  R.15-10 at 6.

Yet despite the broad language of the release, litigation continued.  In October 2024, Ramgoolam filed a lawsuit in federal court claiming that his income had fallen below 125% of the federal poverty line over the previous three years.  He demanded that Gupta pay him the support she had agreed to provide in the Affidavit of Support.

Gupta moved to dismiss Ramgoolam's complaint on two grounds:  that the court lacked jurisdiction over Ramgoolam's claim due to *Rooker* and *Feldman* and that claim preclusion barred his lawsuit anyway.  The district court rejected Gupta's jurisdictional argument.  It agreed with Gupta, however, that the divorce judgment precluded Ramgoolam's claim.  The court dismissed the action on that ground.  Ramgoolam appealed.

## II.

Gupta claims that the district court did not have jurisdiction to review Ramgoolam's claim under *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Due to the jurisdictional nature of the contention, we must address it at the outset.  *Rooker* and *Feldman* present a jurisdictional rule that bars the door to federal court for "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *HPIL Holding, Inc. v. Zhang*, 168 F.4th 944, 949 (6th Cir. 2026) (quotation omitted).  The argument is frequently invoked but rarely granted.  This case follows that pattern.  As the district court correctly recognized, Ramgoolam "is not complaining of injuries caused by a state-court judgment."  R.22 at 13.

III.

Ramgoolam raises two questions on appeal.  First, may a federal court apply state claim preclusion rules to federal Affidavits of Support?  And second, did the district court correctly apply Michigan's claim preclusion principles?  The answer is yes on both scores.

*Whether to apply Michigan claim preclusion law.*  The district court correctly applied Michigan's claim preclusion rules to Ramgoolam's lawsuit.  The Full Faith and Credit Act requires federal courts to give a state court's judgments the same preclusive effect they would enjoy under that State's law.  28 U.S.C. § 1738; *Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019).  To determine whether the Michigan divorce judgment barred Ramgoolam's federal lawsuit thus required the district court to apply Michigan claim preclusion law.

That the Affidavit of Support is a creature of federal law does not change matters.  The Immigration and Nationality Act requires immigrants who apply for a family-based visa to find a sponsor.  8 U.S.C. § 1182(a)(4)(C).  That sponsor must commit to support the immigrant financially by signing an Affidavit of Support.  *Id.* § 1183a(a)(1)(A).  Once an immigrant attains permanent resident status, his sponsor's financial obligations lock into place.  At that point, the sponsor may not withdraw the Affidavit without the immigrant giving his permission and surrendering his visa.  8 C.F.R. § 213a.2(f).  If a sponsor fails to live up to her financial commitment, the immigrant may bring an "action to enforce [the] affidavit of support . . . in any appropriate court."  8 U.S.C. § 1183a(e).  Federal law provides that an Affidavit remains enforceable unless one of a few specific terminating events occurs, such as the immigrant's death.  *See id.* § 1183a(a)(2), (3); 8 C.F.R. § 213a.2(e)(2)(i)(E).

This broad policy of enforceability, however, does not displace traditional claim preclusion principles.  We read statutes only to eliminate preclusion requirements if Congress "plainly" required it.  *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 344 (2005) (quotation omitted).  The relevant statutory provisions in the Act never mention preclusion.  That eliminates the possibility of an express repeal of preclusion principles.  Inferences alone rarely suffice in this setting.  In vesting jurisdiction over the "action to enforce" in "any appropriate court," 8 U.S.C. § 1183a(e), the statute is most naturally read to create that

cause of action on similar terms with the legion of peer actions in federal law, nearly all of which are subject to the strictures of § 1738.  In the absence of a clear congressional statement to the contrary, we may not countenance "an exception to" the Full Faith and Credit Act.  *San Remo Hotel*, 545 U.S. at 344–45 (quotation omitted).  The district court correctly invoked Michigan's preclusion rules.

Ramgoolam resists this conclusion on federal preemption grounds.  Because Michigan preclusion law creates an obstacle to enforcing the Immigration and Nationality Act, he reasons, federal law preempts the State's claim preclusion rules.  But Ramgoolam's preemption-of-preclusion argument tries to fit square pegs into round holes.  Federal preemption applies to *state* law.  The point of federal preemption is to enforce the Supremacy Clause.  *See Fenner v. Gen. Motors, LLC*, 113 F.4th 585, 593 (6th Cir. 2024).  When state and federal law conflict, federal law prevails.  But these principles have no purchase when analyzing another federal law itself.  The preclusion rules at stake originate in the federal Full Faith and Credit Act.  The statute, to be sure, incorporates state-law principles.  But state law incorporated by a federal statute becomes "a part of the federal statutory scheme[,] so it is federal law being given effect, not state law." *In re Stockburger*, 1997 WL 41202, at *2 (6th Cir. Jan. 31, 1997); *see Arkansas v. Oklahoma*, 503 U.S. 91, 110 (1992).  Like snow boots in quicksand, Ramgoolam's preemption arguments simply don't help him escape the situation at hand.

Ramgoolam cites several out-of-circuit cases in which courts have declined to allow immigration sponsors to invoke state-law defenses to Affidavit enforcement actions.  *See Liu v. Mund*, 686 F.3d 418, 422 (7th Cir. 2012); *Erler v. Erler*, 824 F.3d 1173, 1176 (9th Cir. 2016); *Belevich v. Thomas*, 17 F.4th 1048, 1051–53 (11th Cir. 2021).  But this represents only another version of the same preemption argument.  Each of these cases involved the preemption of defenses provided by state contract law.  *Liu*, 686 F.3d at 422 (failure to mitigate); *Erler*, 824 F.3d at 1177 (contractual release of claims); *Belevich*, 17 F.4th at 1050–51 (unclean hands, anticipatory breach, and equitable estoppel).  But Gupta's preclusion defense, it bears repeating, originates in federal law.  *See* 28 U.S.C. § 1738.  "Federal statutes do not 'preempt' other federal statutes." *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004) (Easterbrook, J.).  No matter

how many variations on a theme Ramgoolam plays, his arguments do not overcome that basic reality.  Preemption cannot rescue him from the requirements of federal law.

Ramgoolam points to the text of the Affidavit of Support to support his argument.  The Affidavit reminds sponsors that "[d]ivorce does not terminate [their] obligations" under the Affidavit.  R.1-1 at 8.  That may be true.  But Gupta's claim preclusion defense does not arise from the divorce.  It arises from Ramgoolam's failure to raise his enforcement claim before or during the divorce proceedings.

*Whether the district court correctly applied claim preclusion.*  Having properly decided to apply Michigan preclusion law, the district court correctly applied that law.  Michigan follows a "broad res judicata rule." *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001).  The rule bars a second action arising from the same transaction if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or *could have been*, resolved in the first." *Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, 983 N.W.2d 401, 405 (Mich. 2022) (emphasis added) (quotation omitted).  The parties agree that the first two elements are met.  They also agree that Ramgoolam never sought to enforce the Affidavit of Support at any time during the divorce proceedings.  They disagree only over whether Ramgoolam could have brought his claim before the Michigan family court.

The Immigration and Nationality Act permits immigrants to enforce an Affidavit of Support "in any appropriate court."  8 U.S.C. § 1183a(e).  As the district court noted, immigrants seeking to enforce Affidavits of Support have relied on this statutory language to raise enforcement claims in state-court divorce proceedings across the country, including in Michigan. *See Greenleaf v. Greenleaf*, 2011 WL 4503303, at *1–2 (Mich. Ct. App. Sep. 29, 2011) (unpublished) (holding that the family division of a circuit court has jurisdiction to adjudicate an Affidavit of Support claim in a divorce proceeding); R.22 at 16–17 (collecting cases in other states).  Ramgoolam could have done the same.  Because he did not, claim preclusion bars his enforcement action.

Ramgoolam raises several counterarguments, each unconvincing.  He correctly notes that Michigan's claim preclusion rules apply only to "those claims *arising out of the same transaction* which [the] plaintiff could have brought, but did not."  *Schwartz v. City of Flint*, 466 N.W.2d 357, 359 (Mich. Ct. App. 1991) (emphasis added).  But he then argues that because a violation of an Affidavit of Support involves proving different facts from those at issue in a divorce proceeding, the two cases did not arise out of the same transaction.

But that's wrong twice over.  In the first place, Ramgoolam misstates the law.  Michigan does not apply a "same evidence" test to determine claim preclusion, opting instead for a broader "same transaction" inquiry.  *Adair v. State*, 680 N.W.2d 386, 397–98 (Mich. 2004).  Rather than focusing on the evidence needed to prove a claim, this approach considers whether the two cases "are related in time, space, origin or motivation, and whether they form a convenient trial unit." *Id.* at 398 (emphasis and quotation omitted).

In the second place, Ramgoolam's argument fails under either test.  Both a calculation of the financial support owed under an Affidavit of Support and a determination of the proper level of spousal support in a divorce proceeding turn on the same basic fact:  an immigrant's income. *See Myland v. Myland*, 804 N.W.2d 124, 127 (Mich. Ct. App. 2010) (court setting spousal support may consider, among other factors, "the abilities of the parties to pay" and their "prior standard of living") (quotation omitted).  It's difficult to think of two proceedings more related in motivation and origin.

Ramgoolam invokes a case from the state of Washington, reading it to say that the State's divorce courts may not adjudicate Affidavit of Support claims.  *In re Marriage of Khan*, 332 P.3d 1016, 1017–20 (Wash. Ct. App. 2014).  His argument has two problems.  For one thing, the case says no such thing.  It merely states that a divorce court "*need not* include enforcement of a person's [Affidavit of Support] obligation" when it calculates spousal maintenance.  *Id.* at 1019 (emphasis added).  It did not decide whether a divorce court can "adjudicate an action for breach of the sponsor's [Affidavit of Support] obligation." *Id.* at 1020.  For a second thing, even if Ramgoolam correctly reads the case as preventing Washington divorce courts from hearing federal enforcement actions, this case is about Michigan law, not Washington law.  And as

explained above, Michigan courts have rejected Ramgoolam's position. *Greenleaf*, 2011 WL 4503303, at *1–2.

Ramgoolam separately argues that he could not have raised his Affidavit-related enforcement claim during the divorce proceeding because the enforcement claim had not yet accrued. Whatever the merits of Ramgoolam's argument, he failed to raise it before the district court. We "treat an argument as forfeited if a party did not raise it below." *Smith v. City of Union*, 144 F.4th 867, 878 (6th Cir. 2025).

We affirm.