**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-2171**

KRISTEN DECINA,

Plaintiff – Appellant,

v.

HORRY COUNTY POLICE DEPARTMENT; AMOS BERRY,

Defendants - Appellees.

Appeal from the United States District Court for the District of South Carolina, at Florence. Joseph Dawson, III, District Judge.  (4:19-cv-02079-JD)

Argued:  December 8, 2022                    Decided:  February 21, 2023

Before WILKINSON and HEYTENS, Circuit Judges, and Henry E. HUDSON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:**   James Bernice Moore, III, EVANS MOORE, LLC, Georgetown, South Carolina, for Appellant.   J.W. Nelson Chandler, CHANDLER & DUDGEON LLC, Charleston, South Carolina, for Appellees.  **ON BRIEF:**  Kathleen C. Barnes, BARNES LAW FIRM, LLC, Hampton, South Carolina; Scott C. Evans, EVANS MOORE, LLC, Georgetown, South Carolina, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kristen Decina brought a 42 U.S.C. § 1983 claim against Officer Amos Berry and the Horry County Police Department for false arrest, malicious prosecution, and other related state law claims following her arrest on domestic violence charges resulting from a dispute between her and her former live-in boyfriend.  Defendants filed a motion for summary judgment arguing *inter alia* that Decina's arrest was made pursuant to a facially valid arrest warrant supported by probable cause.  Defendants also maintain that Officer Berry was entitled to qualified immunity for any alleged constitutional violations.  The district court adopted the magistrate judge's Report and Recommendation and granted Defendants' motion for summary judgment.  Decina filed this appeal challenging the district court's order.  We affirm.

I

In reviewing the district court's grant of summary judgment, we view the facts in the light most favorable to Appellant.  *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 644 (4th Cir. 2020).  The material facts underlying this dispute were drawn from Officer Berry's incident report, written statements provided by Decina and her former live-in boyfriend, Brandon Atkinson, and interviews with both parties as they were recorded on Officer Berry's body camera.  The dispositive facts are not genuinely contested.

On January 6, 2018, at 9:03 a.m., Officer Berry was dispatched to Decina's home and arrived at approximately 9:11 a.m. to investigate a domestic dispute that had occurred

2

several hours earlier.[1]  Officer Berry investigated the incident and interviewed the only witnesses—Decina and Atkinson—pursuant to HCPD's General Order 20-8 (the "Domestic Violence Policy").  In accordance with the Domestic Violence Policy, Officer Berry asked both parties to prepare an individual written statement documenting the events as they believed them to be.  Both parties reported some common facts but largely conveyed different accounts of what happened that morning.

When Officer Berry first arrived at Decina's residence, he asked her if she had any injuries because that was a prerequisite to investigating the incident as a domestic violence incident.  He also told her that he would also need to get Atkinson's version of what occurred.  Decina stated that she understood and then said "my thing is like there's $5,000 damage to my car[.]" J.A. Vol. II Pl. 1 Video-HCPD 156, 03:19-03:35.  Decina stated she did not know what to do and Officer Berry explained that he could not provide legal advice, but that if she wanted to pursue a domestic violence charge, he would need a statement from both parties.  Decina then asked Officer Berry to document the damage to her car.

Officer Berry then directed Decina to draft a written statement outlining the underlying events.  Officer Berry described the procedures for processing domestic violence investigations, specifying that he would interview both parties and if he could not

---

[1] Decina claims that she made a 911 call at around 1:30 a.m. and suggests this was the call to which Officer Berry responded, but no 911 call from this time period is in the record and the only evidence in the record was that Officer Berry was dispatched at 9:03 a.m.  Even so, Officer Berry testified that he asked dispatch about any previous 911 calls and was told that there was only the 9:00 a.m. call for which he was dispatched. *See* J.A. 435–36.

determine which party was the primary aggressor, the information would be presented to a judge to determine if warrants for both parties were appropriate. Decina completed her statement while Officer Berry took photos of the damage to Decina's property.

Officer Berry asked Decina if it was her wish to pursue domestic violence charges against Atkinson. Officer Berry replied that it was up to the solicitor to decide whether prosecution was appropriate. He explained that he was required to investigate both sides of the story before the judge "can make a determination of if they want to issue warrants or not." *Id.*, 11:07-11:59.

Officer Berry reviewed Decina's completed statement and continued to interview her. Decina explained that Atkinson no longer lived with her or had a key to her home. Although she told Atkinson not to come over that night, he appeared at her home anyway and knocked on the door for five minutes until she eventually let him in. Atkinson was drunk and high and refused to leave after she repeatedly asked him to do so. Decina stated that the physical altercation between the two began when Atkinson "became enraged" after she replied to a message on his cell phone. Decina wrote in her statement and told Officer Berry that Atkinson "pushed her, punched her in the stomach, grabbed her hands and hair, banged her hands down, dug his fingers into her hands, and held her down while she thrashed to get free." J.A. 93; J.A. Vol. II Pl. 1 Video-HCPD 156, 30:26-30:30. Decina showed Officer Berry photos on her phone of the injuries she believed Atkinson caused to her wrist, hands, and hip. She stated she acted in self-defense.

Decina explained that after the physical altercation, she locked herself in the bathroom with Atkinson's phone to protect herself, and then Atkinson punched a hole

4

through the bathroom door. She then ran out of the bathroom and threw the phone outside of the house to try to make Atkinson leave. When Atkinson attempted to retrieve his phone, Decina locked him outside. While outside, Atkinson beat and screamed at the front door of her home and damaged her vehicle. Officer Berry took custody of Atkinson's damaged phone, which was located outside of Decina's house.

After Officer Berry interviewed Decina, he drafted his case report, including the narrative summary of the facts Decina provided to him. Officer Berry then had HCPD dispatch another officer to Atkinson's mother's house to get Atkinson's version of events, but no one answered the door. Officer Berry eventually spoke to Atkinson by phone, gave him his *Miranda* rights, and arranged to meet with him in person. He explained over the phone that he needed Atkinson's version of events "because any time domestic violence is involved it has to be presented to a judge." J.A. 153.

Atkinson provided a different version of events. He explained that he went into Decina's home and Decina asked him to show her his phone. When he showed her his phone, she grabbed it and ran into the bathroom and locked the door. Atkinson tried to open the door and put a hole in the door with his knee. When Decina opened the door, she slammed his phone to the ground, picked it up, and threw it outside. Decina then turned around and "charged" him into the wall and "knocked [him] to the ground." J.A. Vol. II Atkinson Video-HCPD 155, 00:00-08:48. Atkinson attempted to talk to Decina, but she "charged [him] again." *Id.* Decina then threw a knife at him and the knife handle hit him in the head, leaving no mark. *Id.* Then, Decina struck him "in the head and body with her fist." *Id.* Atkinson stated, "I grabbed her and tried to calm her down [and] she bit me in

the chest and said she was calling the police so I went outside to look for my phone and wait for the police." *Id.* He explained that he kicked Decina's car "out of frustration" before returning to the front door of Decina's house. J.A. 96.

Officer Berry then reviewed Atkinson's written statement and asked follow-up questions. Atkinson denied being intoxicated and explained that Decina originally told him not to come over but eventually let him in, as she had done in the past. Atkinson stated that he thought he might have gotten a bruise on the back of his head from hitting the wall and a bite mark on his chest. Officer Berry told Atkinson that because both parties had marks on their bodies, he had to present both cases to the judge to determine what action was appropriate. Atkinson claimed that he never hit Decina and that "he was on the defense the whole time." J.A. Vol. II Atkinson Video-HCPD 155, 23:10-24:45. Officer Berry advised Atkinson that the competing claims of malicious damage to property—Decina's car and bathroom door, and Atkinson's phone—would be presented to the judge in his incident report at a later date because he was waiting for an estimate of the damage to Decina's vehicle.

South Carolina's Criminal Domestic Violence statute, S.C. Code Ann. § 16-25-70 (the "CDV" statute), states that an officer:

> who arrests two or more persons for a crime involving domestic or family violence must include the grounds for arresting both parties in the written incident report, and must include a statement in the report that the officer attempted to determine which party was the primary aggressor pursuant to this section and was unable to make a determination based upon the evidence available at the time of the arrest.

6

S.C. Code Ann. § 16-25-70(F).  To determine the primary aggressor, the CDV statute requires an officer to:

> consider the following factors and any other factors he considers relevant:
>
> (1) prior complaints of domestic or family violence;
> (2) the relative severity of the injuries inflicted on each person taking into account injuries alleged which may not be easily visible at the time of the investigation;
> (3) the likelihood of future injury to each person;
> (4) whether one of the persons acted in self-defense; and
> (5) household member accounts regarding the history of domestic violence.

*Id.* § 16-25-70(D).  HCPD policy requires that an officer who receives complaints of two or more parties "must evaluate each complaint separately to determine whether there is probable cause for an arrest." J.A. 152.  "The arrest and charge of both parties for domestic violence on each other is strongly discouraged. If both parties are arrested, the officer shall include in the report the grounds for arresting two or more parties." *Id.*  In South Carolina, a criminal proceeding before a magistrate judge "shall be commenced on information under oath, plainly and substantially setting forth the offense charged, upon which, and only which, shall a warrant of arrest issue." S.C. Code. Ann. § 22-3-710.

As the interview with Atkinson concluded, Officer Berry explained that he would present the domestic violence case to the magistrate judge because it was difficult to identify the primary aggressor based on the conflicting versions of the event.  Atkinson told Officer Berry that he preferred to address the malicious damage charges outside the

7

legal system and offered to pay Decina for the damage to her car but if she were to press charges, he would then press charges against Decina because she damaged his phone.[2]

After interviewing Atkinson, Officer Berry updated his incident report narrative to reflect the information Atkinson provided to him. Officer Berry concluded in his report, "[b]ased on talking with both parties and what they wrote I can't determine who the primary aggressor is so this case will be presented for domestic violence for both parties." J.A. 85. At some point during the investigation, Officer Berry ran criminal histories on both parties regarding prior convictions for criminal domestic violence and found that no histories were reported. Officer Berry was aware of and obtained photographs of the injuries claimed by both parties, and knew that Atkinson no longer lived with Decina, nor had a key to her residence.

Pursuant to the Domestic Violence Policy, Officer Berry completed and uploaded his report and proposed charging documents "before the end of his tour of duty." J.A. 154. Officer Berry was not scheduled to work the following day but knew that the case needed to be presented to a magistrate judge the next day in accordance with the Domestic Violence Policy that requires domestic violence cases "be presented to a magistrate within 24 hours." *Id.* At 7:34 p.m. on Saturday, June 6, 2018, Officer Berry sent an email to the "JRL Magistrate Office" with the subject line: "Warrant Aff along with Report and Pictures," with the following documents attached: (1) a warrant request form seeking an

---

[2] The Court takes judicial notice that Atkinson was ultimately charged by Officer Berry with felony malicious damage to personal property on May 16, 2018, but the charge was *nolle prossed* on February 8, 2019.

arrest warrant against Atkinson; (2) a warrant request form seeking an arrest warrant for Decina; (3) Officer Berry's entire case report; and (4) photos documenting Decina's injuries and property damage to her vehicle and bathroom door, and the bite mark on Atkinson. J.A. 70–88.

Because Officer Berry was not on duty the following day, Officer Deanne Pennington presented Officer Berry's warrant requests to the county magistrate judge while under oath. It is standard practice for other officers to present warrants on behalf of off-duty officers, and for warrant presentations to include the warrant request forms *and* the supplemental case report. Officer Pennington read Officer Berry's warrant requests forms and case report before presenting the case to the magistrate judge and knew that she could call Officer Berry if she had questions. While presenting the warrant requests, she testified to the information in the forms and physically provided another copy of Officer Berry's case report directly to the magistrate judge. She encouraged the magistrate judge to read Officer Berry's case report. The magistrate judge found probable cause and issued warrants seeking the arrest of both Decina and Atkinson.

On January 22, 2018, Decina turned herself in and was booked and released within four hours. On March 2, 2018, her case was dismissed at her preliminary hearing when the solicitor took "no position on this case." J.A. 438. Decina later had her arrest expunged. Thereafter, Decina filed this action under 42 U.S.C. § 1983 contending that she was arrested and prosecuted without probable cause. The district court determined Decina failed to establish a violation of her constitutional rights, that Officer Berry had probable cause to arrest her, and was otherwise entitled to qualified immunity.

II

We "review[] de novo the district court's order granting summary judgment." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 565 n.1 (4th Cir. 2015). "A district court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 568 (quoting Fed. R. Civ. P. 56(a)). In determining whether a genuine issue of material fact exists, "we view the facts and all justifiable inferences arising therefrom in the light most favorable to . . . the nonmoving party." *Id.* at 565 n.1 (internal quotation marks omitted). However, "the nonmoving party must rely on more than conclusory allegations, mere speculation, [or] the building of one inference upon another." *Humphreys & Partners Architects v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted). "[T]he relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted).

There is no dispute that Decina was arrested pursuant to a facially valid warrant issued by a disinterested magistrate judge. In such cases, to establish liability under 42 U.S.C. § 1983 for a Fourth Amendment violation, Decina must establish that she was seized pursuant to legal process unsupported by probable cause.[3] *See Humbert v. Mayor*

---

[3] In *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996), we recognized that a claim for false arrest may be considered only when no arrest warrant has been obtained. *See also Heck v. Humphrey*, 512 U.S. 477, 483–84 (1994) ("[A]llegations that (Continued)

*and City Couns. of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017), *as amended* (Aug. 22, 2017). A party challenging the veracity of a warrant application "must show that the officer(s) deliberately or with reckless disregard for the truth made material false statements in the warrant application" or "omitted from that application material facts with the intent to make, or with reckless disregard of whether they thereby made, the application misleading." *Id.* at 556 (internal quotation marks and citations omitted).

Decina argues on appeal that Officer Berry omitted material facts with reckless disregard by failing to properly inform the magistrate judge of facts he knew would negate probable cause.[4] Decina does not contest that the alleged omitted facts were in Officer Berry's investigatory report. Rather, she claims that Officer Berry's act of emailing an unsworn report with additional facts to a general inbox for the magistrate court, coupled with delegating Officer Pennington to appear on his behalf with no personal knowledge of the case, was insufficient since the magistrate judge could not legally rely on that unsworn information. In other words, Decina argues that Officer Berry's act of submitting "unsworn" facts in his supplemental case report is tantamount to recklessly "omitting" facts

an arrest made pursuant to a warrant was not supported by probable cause . . . are analogous to the common-law tort of malicious prosecution," whereas "allegations that a warrantless arrest . . . was not supported by probable cause advance[] a claim of false arrest"). Because it is undisputed that Officer Berry obtained a warrant to arrest Decina, no "false arrest" of Decina could have occurred.

[4] Decina argues that the warrant request states facts that Decina caused physical harm to Atkinson and used a weapon but omits the following allegedly material facts: (1) Decina repeatedly asked Atkinson not to come to her home, (2) Atkinson was intoxicated, (3) Atkinson physically injured Decina and Officer Berry saw her fresh injuries, and (4) Atkinson admitted he caused property damage to Decina's home and vehicle.

for purposes of Fourth Amendment review. She also maintains that there is a factual dispute as to whether the magistrate judge ever read Officer Berry's report. Decina also contends that Officer Berry is not entitled to qualified immunity because there was no probable cause for her arrest.[5]

The district court correctly concluded that unsworn items in an investigatory file can be used to establish probable cause, and that there is nothing in the record to show that the magistrate judge failed to consider the information available to him to fulfill his duties. Furthermore, Decina is unable to demonstrate that Officer Berry omitted any facts, much less that he did so with reckless disregard for the accuracy of the application. *See Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007) (explaining that the inquiry for determining whether an officer omits material facts turns on whether the officer "failed to inform the judicial officer" of facts known to negate probable cause). Here, Officer Berry provided all relevant information to the magistrate judge, some of which was in the supplemental investigatory report. Officer Berry did not "hide facts" from the magistrate judge that he knew would negate probable cause. *Id.* at 630. Once Officer Pennington was placed under oath before the magistrate judge, she submitted Officer Berry's arrest warrant applications for Decina and Atkinson, along with Officer Berry's full incident report for

---

[5] Decina also argues that the district court erred in overruling two of her objections as non-specific "because it took a narrow view of her objections and failed to consider the significance of those objections to the merits of her argument." Appellant's Br. at 20. The Court agrees with the district court's determination that the objections merely restated arguments Decina had previously raised in her opposition to summary judgment. Moreover, Decina's argument is unclear because she does not explain how any alleged error in this regard would impact the outcome of this appeal.

the judge's review (even though he already had a copy before him) and encouraged him to read it.[6]

Furthermore, Appellees correctly point out that the facts upon which Decina relies are immaterial to the dispositive issue at hand, namely, whether probable cause existed based upon the warrant affidavit. In determining whether probable cause would have existed if omitted facts were included in the original affidavit, the omitted information "must be such that its inclusion in the affidavit would defeat probable cause for arrest. Omitted information that is potentially relevant but not dispositive is not enough . . . ." *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990). Here, the district court properly concluded that probable cause existed at the time the warrant was issued. "Probable cause is not a high bar, and it must be assessed objectively based on a totality of the circumstances, including common-sense conclusions about human behavior." *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020). Decina was charged with second degree domestic violence in violation of S.C. Code Ann. § 16-25-20. This statute makes it "unlawful to: (1) cause physical harm or injury to a person's own household member[7]; or (2) offer or attempt to cause physical harm or injury to a person's own household member

---

[6] As Appellees point out, even if Officer Berry did omit material facts, Decina fails to establish that Officer Berry acted with the requisite culpability. *See United States v. Colkley*, 899 F.2d 297, 300–01 (4th Cir. 1990) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

[7] "[H]ousehold member" is defined as "a male and female who are cohabitating or formerly have cohabitated." S.C. Code Ann. § 16-25-10(3)(d).

13

with apparent present ability under circumstances reasonably creating fear of imminent peril." S.C. Code Ann. § 16-25-20(A).

Officer Berry charged Decina with second degree domestic violence because Decina reportedly assaulted Atkinson with a knife. To establish probable cause, Officer Berry needed to present facts establishing that Decina was a household member of Atkinson, she attempted to cause physical harm or injury to Atkinson, and did so by means likely to result in significant bodily injury to Atkinson. The warrant facially satisfies these elements: "the defendant used her personal weapons by physically assaulting her ex-boyfriend with whom [s]he has formerly cohabitated . . . [T]he defendant then picked up a knife and threw it at the victim striking him in the head with the handle." J.A. 189. Inclusion of the additional facts identified by Decina into the warrant application would not defeat the existence of probable cause. Moreover, Decina's argument that there was no probable cause to arrest her because Officer Berry failed to make a primary aggressor assessment fails. In investigating the incident, Officer Berry considered the relevant statutory factors and later testified that he could not determine who the primary aggressor was because he received conflicting statements. South Carolina allows for officers to submit applications for arrest warrants for both parties in such circumstances, which is what took place in the case at hand. Officer Berry's failure to identify a primary aggressor does not mean there was no probable cause for Decina's arrest.

Lastly, the district court correctly concluded that Officer Berry is entitled to qualified immunity. "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause

14

is unreasonable." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996). Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When evaluating a qualified immunity defense, the court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right and whether that right was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 230–33 (2009). The Court determined that Officer Berry had probable cause to arrest Decina. Even when viewing the evidence in the light most favorable to Decina, the Court finds that Officer Berry did not violate Decina's constitutional rights and that he performed the discretionary functions of his official duties in an objectively reasonable fashion, and thus is entitled to qualified immunity.

For the foregoing reasons, we affirm the district court's grant of Defendants' motion for summary judgment.

*AFFIRMED*

15