**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 18-4448**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

    v.

MELVIN LEE JONES,

    Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  M. Hannah Lauck, District Judge.  (3:17-cr-00071-MHL-1)

Argued:  October 31, 2019                    Decided:  March 3, 2020

Before NIEMEYER and AGEE, Circuit Judges, and Thomas S. KLEEH, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Agee and Judge Kleeh joined.

**ARGUED:**    Joseph Stephen Camden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant.  Daniel T. Young, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Olivia L. Norman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

When Melvin Jones opened the front door of his house to the knock of Richmond, Virginia police officers investigating a complaint, the officers smelled a strong odor of marijuana smoke coming from within the house. As possession of marijuana is a crime in Virginia, *see* Virginia Code § 18.2-250.1, the officers arrested Jones and conducted a sweep of the house to ensure that no one else was inside. While conducting the sweep, the officers observed a still-smoldering marijuana cigarette lying in an open trash can in the kitchen.

Based on the officers' smell of marijuana smoke at Jones's house and their observation of the used marijuana cigarette, the officers obtained a warrant to search the house for evidence of marijuana possession. The warrant authorized the officers to search "any safes or locked boxes that could aid in the hiding of illegal narcotics." Upon conducting the search, the officers found a handgun in a safe in Jones's bedroom closet. They also recovered marijuana, crack cocaine, and items commonly used for packaging and weighing narcotics.

Jones pleaded guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), reserving the right to challenge the district court's order denying his motion to suppress the evidence obtained from the search on the ground that the warrant was overbroad. As he explains:

> [P]robable cause in this case did not extend to containers, including a locked safe in a bedroom closet . . . . The mismatch between the justification for the warrant for simple possession of marijuana (a single smoldering joint), and the scope of the search to include every container in the house, top to bottom, rendered the warrant overbroad.

2

We conclude that because the officers had probable cause to believe that a crime was being committed in Jones's house, the warrant appropriately authorized the search of the house for evidence of that crime. We find Jones's argument — that the warrant should have been limited in geographic scope because the smoldering marijuana cigarette in the trash can was the likely source of the marijuana odor — to be unpersuasive. Put simply, the presence of one marijuana cigarette in the kitchen did not negate the fair probability that other evidence of the crime of marijuana possession would be found in the house. Accordingly, we affirm.

I

In May 2016, the Richmond Police Department received an anonymous tip on a hotline — created to encourage members of the public to report illegal gun possession — that a man named Melvin Jones, going by the name "Mello," was selling marijuana and crack cocaine from 3008 Berwyn Street in Richmond. The tipster reported having personally seen Jones both sell and cook narcotics and stated that Jones kept the utensils he used to cook the narcotics in a safe in his closet and stored the drugs in different places throughout the house. According to the tipster, Jones kept a handgun either on his person, in his dresser, or under his mattress. Finally, the tipster reported that Jones had a hidden camera on his porch to enable him to see who was approaching the house. The police department retained this tip as a complaint to be investigated in due course.

Several months later, on the afternoon of August 24, 2016, Officer Jonathan Myers and two other officers went to 3008 Berwyn Street to investigate the tip by conducting a

3

"knock and talk." Officer Myers, who was familiar with Jones from prior interactions, knocked on the front door while the two other officers stood behind him. Within ten seconds, Jones opened the door and, as soon as he did, the officers smelled a strong odor of marijuana smoke coming from inside the house.

Based on the marijuana odor, the officers seized Jones as he was standing on the door's threshold, placed him in handcuffs, and seated him on a chair on the front porch. When Jones indicated that his niece and nephew were inside the house, the officers and Jones called the children out of the house. Then, while one officer stayed with Jones and the children on the front porch, Officer Myers and the other officer entered the house and conducted a protective sweep to verify Jones's statement that there were no other people inside the house. During the sweep, which lasted about two minutes, Myers observed a still-smoldering marijuana cigarette sitting on top of the trash in an open trash can in the kitchen.

After completing the sweep, Officer Myers allowed Jones to return to the house and directed him to remain there. When Jones declined to give his consent for a search of the house, Myers left the house to apply for a search warrant while the other officers remained with Jones.

To support his request for the warrant, Officer Myers prepared an affidavit indicating that he was requesting the warrant "in relation to . . . Simple Possession of Marijuana," a violation of Virginia Code § 18.2-250.1. As the factual basis for the request, the affidavit explained that Myers and other officers had conducted a "knock and talk" at 3008 Berwyn Street to investigate an anonymous tip received by the police department

4

some months before.  The affidavit described the officers' encounter with Jones, stating that "[a]s soon as the door was opened" by Jones, Myers "could smell a strong odor coming from inside the home."  Myers noted in the affidavit that "[b]ased on [his] training and experience," he believed the odor to be marijuana.  Finally, Myers stated that after Jones had been detained "[b]ased on the odor," he had performed a "check" of the residence "in an effort to make sure there were no other people located [inside]" and that, during that check, he had observed what he "believed to be a marijuana cigarette in the kitchen trash can, sitting on the top of the trash, still burning."

Based on Officer Myers's affidavit, a magistrate issued a warrant authorizing police to search 3008 Berwyn Street in relation to the crime of simple possession of marijuana and to seize:

> Any controlled substances (marijuana) and any paraphernalia used in the use of illegal narcotics.  Any instruments used in the illegal drug usage of marijuana or any other illegal substance.  Any electronic devices used to aid in the usage of illegal narcotics, any firearms and ammunition, any financial records and any written records identifying any person(s) involved in the illegal drug use and/or indicating residence in the dwelling.  Also any safes or locked boxes that could aid in the hiding of illegal narcotics.

Officer Myers returned to 3008 Berwyn Street with a copy of the search warrant and then sat with Jones in the living room while the other officers conducted the search.  In a safe in Jones's bedroom closet, officers recovered a handgun, and elsewhere they recovered marijuana, crack cocaine, and items commonly used for packaging and weighing narcotics.

After Jones was indicted for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), he filed a motion to suppress the evidence obtained

5

during the search of his house, contending, among other things, that the search warrant was overbroad and thus violated his Fourth Amendment rights. He acknowledged that "officers may have had probable cause to search for *the* marijuana that they smelled" but maintained that the magistrate lacked a basis to authorize the officers to search "safes [and] locked boxes," as there was no probable cause to believe that such containers would hold burning marijuana. Indeed, though Jones separately challenged the legality of the officers' sweep of the residence, he argued further that the officers' observation of "a still-smoking marijuana cigarette" during the sweep meant that they had already identified the source of the odor and therefore should not have been authorized to search the rest of the house for evidence of marijuana possession. In short, he challenged the reasonableness of the geographic scope of the warrant.

Following an evidentiary hearing on Jones's motion to suppress, the district court denied Jones's motion by a memorandum and order dated February 16, 2018. The court indicated that the officers' immediate detection of the marijuana odor when Jones opened the door was alone sufficient to establish probable cause that the house contained evidence of marijuana possession. It also overruled Jones's argument that the warrant was fatally overbroad, rejecting what it called Jones's "novel theory" that the officers had probable cause "to search only for *actively burning* marijuana" and ruling instead that the officers had probable cause to search the entire residence, including closed containers, for *any* marijuana, burning or otherwise.

After his motion to suppress was denied, Jones entered a conditional guilty plea to possession of a firearm by a felon, reserving his right to appeal the district court's ruling

6

on the motion. The government, in turn, agreed to dismiss the drug-trafficking count, and the district court sentenced Jones to 54 months' imprisonment.

From the district court's final judgment dated June 11, 2018, Jones filed this appeal, challenging only the district court's denial of his motion to suppress.

II

Jones contends that the warrant authorizing the police officers to open "any safes or locked boxes" in his house — leading to the officers' discovery of the handgun in his safe — violated his Fourth Amendment rights. Specifically, he argues that the evidence in the warrant affidavit that officers had detected a strong odor of marijuana coming from the house and observed a smoking joint in the kitchen trash can failed to establish probable cause that other locations in the house would hold evidence of marijuana possession. In his view, the officers' detection of the marijuana odor as they opened the door provided them with "probable cause *only* to believe that [he] was smoking a marijuana cigarette in his home," and the search should have ended "when the officers discovered the source of the smell," *i.e.*, "the actual still-smoking marijuana cigarette." (Emphasis added). He maintains that "[t]he mismatch between the justification for the warrant for simple possession of marijuana (a single smoldering joint), and the scope of the search to include every container in the house, top to bottom, rendered the warrant overbroad."

The relevant legal principles are well settled. To be lawful under the Fourth Amendment, the nonconsensual search of a home by law enforcement officers ordinarily requires a warrant. *See Fernandez v. California*, 571 U.S. 292, 298 (2014). And the Fourth

7

Amendment specifically provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause requires only "the kind of fair probability on which reasonable and prudent people, not legal technicians," would rely. *Florida v. Harris*, 568 U.S. 237, 244 (2013) (cleaned up). Thus, the task of a judicial officer presented with an application for a search warrant is "to make a practical, common-sense" determination of whether the sworn facts submitted in support of the application establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause is "not a high bar," and it must be assessed objectively based on a totality of the circumstances, including "common-sense conclusions about human behavior." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586–87 (2018) (cleaned up). Moreover, we afford "great deference" to a magistrate's determination that probable cause for the search had been established, *Gates*, 462 U.S. at 236 (cleaned up), by reviewing whether "the magistrate had a substantial basis for concluding that probable cause existed" to search a particular place for evidence of a specific crime, *id*. at 238–39 (cleaned up).

In this case, Officer Myers specifically stated in his affidavit that as soon as Jones opened the front door, he "could smell a strong odor coming from inside the home" and that he believed the odor to be that of marijuana based on his "training and experience." And we have "repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place." *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004); *see also Wesby*, 138 S. Ct. at 586 n.5 (relying on

8

*Johnson v. United States*, 333 U.S. 10, 13 (1948), for the proposition that "'the odor' of narcotics can 'be evidence of the most persuasive character'"). Thus, based on the officers' detection of a strong odor of marijuana smoke coming from Jones's house, the magistrate lawfully issued a warrant authorizing the search of Jones's entire house, including safes and locked boxes, for evidence of the crime of marijuana possession.

While Jones concedes that the officers had probable cause to believe that marijuana would be found in his residence, he contends that the marijuana odor that the police detected provided a basis to search only for the source of odor. He thus maintains that when the officers located a "smoldering marijuana joint" in the kitchen trash can, they lacked probable cause to believe that there was any *other* marijuana in the house, and the warrant should have been limited to the search and seizure of the marijuana cigarette.

Jones's argument, however, applies a too-cramped understanding of the scope of a proper warrant. The geographical scope of a warrant complies with the Fourth Amendment if, in light of "common-sense conclusions about human behavior," *Wesby*, 138 S. Ct. at 587 (cleaned up), there is a "fair probability that contraband or evidence of a crime" will be found in the areas delineated by the warrant, *Gates*, 462 U.S. at 238. Here, the officers had evidence that Jones, who was the only adult in the house at the time, had been smoking marijuana in the single-family residence where he lived when the officers knocked on the front door. Common sense indicates that it was fairly likely that the marijuana Jones was smoking was not the only marijuana in the house. Indeed, a reasonable officer would be entitled to infer that it was most likely but a single portion of a larger quantity that was stored somewhere in the house. Moreover, it would also be reasonable to conclude that

9

there was a fair probability that the house contained evidence of the source of the marijuana or the scope of Jones's possession violation. And, of course, common sense would also indicate that such evidence is often stored out of sight. In short, based on common sense and context, a fair probability existed that further evidence of Jones's crime would be uncovered elsewhere in his house, which justified a warrant authorizing the search of the entire house, not just the kitchen trash can where the smoldering marijuana cigarette was observed.

The circumstances presented here are thus unlike those relied on by Jones where there was only probable cause to conclude that *a particular item* of evidence or contraband would be found in a house. Thus, "if it [were] shown that the occupant of the premises to be searched recently knowingly received *two items* of stolen property, . . . there [would be] probable cause to search *for those two items*, but this alone [would] not establish the suspect's ongoing activities as a fence so as to justify issuance of a warrant authorizing [a] search for other stolen property as well." 2 Wayne R. LaFave, *Search & Seizure* § 3.7(d) (5th ed. 2012) (emphasis added). Similarly, police who have a warrant based on probable cause to search a residence for *a particular rifle* "may search only places where rifles might be and must terminate the search once *the rifle* is found." *Horton v. California*, 496 U.S. 128, 141 (1990) (emphasis added) (cleaned up). These examples demonstrate that, in some circumstances, probable cause can exist only as to a specific and identifiable object, and the warrant in such instances must accordingly be limited to places where that object could be found. But it does not follow that probable cause to believe that *some* incriminating evidence will be present at a particular place can *never* give rise to probable cause to believe

10

that there will be more of the same at that place or another logical place.  *See* LaFave, *supra*, § 3.7(d) (noting that a "some-means-more inference may be permissible" depending on the circumstances).  And here, when evidence showed that Jones had just been using a small amount of marijuana in one room of his house, it reasonably followed that more marijuana or other evidence of the crime of marijuana possession was fairly likely to be found elsewhere in the house.

We thus hold that the magistrate, presented with evidence that Jones was illegally possessing and smoking marijuana in his house, had a substantial basis for concluding that probable cause existed to search the entire house for evidence of marijuana possession, even if the source of the smoke was a smoldering marijuana cigarette found in the kitchen trash can.  And because the warrant properly authorized a search of Jones's house, including any safes and locked boxes, the officers legally discovered the handgun that Jones kept in the safe in his bedroom closet.

In view of our conclusion that the smell of marijuana smoke from within Jones's house provided probable cause sufficient for the issuance of a warrant to search the house, we need not address Jones's additional argument that the anonymous tipster's complaint should not have been considered by the magistrate in assessing whether probable cause was shown.

Jones argues alternatively that the search of his house was not conducted *pursuant* to the warrant because Officer Myers did not inform the executing officers of the warrant's specific terms.  But the lack of such instruction provides no basis to suppress the evidence

11

recovered when the search was, in fact, conducted in conformance with a valid warrant, as was the case here.

The judgment of the district court is accordingly affirmed.

AFFIRMED